**Edward 25X KING a/k/a Edward Kerr, Plaintiff,**

v.

**Michael MACRI, Edward Kondek, Rudolf Marrero and Ann Tyler, Defendants.**

No. 83 Civ. 7136 (PKL).

United States District Court, S.D. New York.

Aug. 11, 1992.

Strook & Strook & Lavan (Robert Lewin, David Bolton, of counsel), New York City, for plaintiff.

Robert Abrams, Atty. Gen. (Ellen J. Fried, June Duffy, Robert F. Bacigalupi, of counsel), New York City, for defendants.

## OPINION AND ORDER

LEISURE, District Judge,

This civil rights action, brought by plaintiff, Edward 25X King ("King"),[1] pursuant to 42 U.S.C. § 1983, was tried to a jury on May 12–15, 1992. Defendants Michael Macri ("Macri") and Edward Kondek ("Kondek") now move the Court, pursuant to Fed.R.Civ.P. 50(b) and 59(a), for judgment as a matter of law, a new trial or a remittitur of the damages award. For the following reasons, the motion is denied.

[1] Prior to trial, the Court was informed by plaintiff that his name has been changed to Al

## BACKGROUND

On June 20, 1983, plaintiff was arrested in the New York Criminal Courthouse, located at 100 Centre Street, in New York City ("Criminal Court"), after allegedly making an obscene gesture at Macri, who was employed as a Court Officer in the Criminal Court, in Courtroom All Purpose 1 ("AP 1"). After allegedly making the obscene gesture, King left the courtroom, and was followed out of AP 1 by Macri. Almost immediately thereafter, a scuffle ensued, involving King, Macri and two other Court Officers: Kondek, who had been working with Macri in AP 1, and Rudolf Marrero ("Marrero"), who had been working across the hall, in Courtroom All Purpose 7 ("AP 7"). As a result of this incident, King was arrested; charged with obstructing governmental administration, assault, disorderly conduct and resisting arrest; and incarcerated until his trial in August 1983. Before King's criminal trial, the charge of obstructing governmental administration was dropped. Thereafter, at his criminal trial in August 1983, the assault charge was dismissed by the court and King was acquitted of the remaining charges by the jury.

In September 1983, King filed the instant suit, claiming that Macri, Kondek, Marrero and Ann Tyler ("Tyler") had violated his federal civil rights, by, *inter alia*, using excessive force during the arrest, arresting him without probable cause and subjecting him to malicious prosecution. By Opinion and Order dated February 23, 1990, this Court dismissed plaintiff's second cause of action, which asserted claims against Tyler based on her role as King's parole officer. Thereafter, at the close of defendant's case, on May 14, 1992, the Court granted a directed verdict, pursuant to Fed.R.Civ.P. 50(a), on the false arrest claims asserted by plaintiff against Kondek and Marrero. Trial Transcript ("Tr."), at 332–37. Accordingly, on May 15, 1992, the Court submitted the remaining claims, of excessive force against Macri, Kondek and Marrero and of

Hasan Malik Muhammad.

false arrest and malicious prosecution against Macri alone, to the jury.

After deliberating for approximately four hours, the jury returned its verdict, finding liability against Macri on the excessive force, arrest without probable cause and malicious prosecution claims; finding liability against Kondek on the excessive force claim; and finding no liability against Marrero. On the excessive force claim, the jury awarded no compensatory damages, but awarded punitive damages of $50,000 against Macri and $75,000 against Kondek. Similarly, on the claim of arrest without probable cause, the jury awarded no compensatory damages, but awarded $50,000 punitive damages against Macri. Finally, on the malicious prosecution claim, the jury awarded $75,000 compensatory and $75,000 punitive damages against Macri.

In response to the jury's verdict, defendants now move for judgment as a matter of law, for a new trial or for a remittitur of the damages award. These motions are based on defendants' claims that there is insufficient evidence to support the jury's findings of liability against Macri and Kondek; that punitive damages cannot be awarded without a showing of actual injury or damages; that the jury's awards of compensatory and punitive damages are excessive; that the punitive damages awards do not bear any relationship to the financial conditions of the defendants; that the jury's verdict was the result of emotion and passion; and that defendants are entitled to qualified immunity.

## DISCUSSION

### A. *Applicable Legal Standards*

On the instant motion, defendants seek three types of relief: judgment as a matter of law under Fed.R.Civ.P. 50(b),[2] a new trial pursuant to Fed.R.Civ.P. 59(a), or a remittitur.

The standard for granting a motion for judgment [as a matter of law] pursuant

to Rule 50(b) is whether " 'the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.' " *Jund v. Town of Hempstead,* 941 F.2d 1271, 1290 (2d Cir.1991) (quoting *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323 (2d Cir.1983) (citation omitted)).

[J]udgment [as a matter of law] is reserved for those rare occasions when there is "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture" or the evidence must be so overwhelming that reasonable and fair minded persons could only have reached the opposite result.

*Sorlucco v. New York City Police Department,* 971 F.2d 864, 871 (2d Cir.1992) (quoting *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989) (citation omitted)).

Turning to the standards for a motion for a new trial, "[a] less stringent standard applies to a motion for a new trial" than to a motion for judgment as a matter of law. *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). "The district court's grant of a new trial motion is usually warranted only if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco, supra,* 971 F.2d at 875 (quoting *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)).

Defendants' third alternative request for relief is for a remittitur, which "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984) (quoted in *Earl v. Bouchard Transportation Co.,* 917 F.2d 1320, 1328 (2d Cir.1990)). "A remittitur, in ef-

---

**2.** Fed.R.Civ.P. 50 was amended, effective December 1, 1991, to replace the labels "directed verdict" and "judgment notwithstanding the verdict" with the term "judgment as a matter of law." However, the amendment "effects no change in the existing standard." 1991 Advisory Committee Notes to Rule 50.

fect, is a statement by the court that it is shocked by the jury's award of damages." *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990). In considering a remittitur motion, the standard of review "is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978); *accord Ismail, supra,* 899 F.2d at 186; *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 955 (2d Cir. 1988); *O'Neill v. Krzeminski,* 839 F.2d 9, 13–14 (2d Cir.1988).

■ The Court next turns to the legal standards that govern plaintiff's substantive claims for relief. To state a claim for excessive force under section 1983, a plaintiff has the burden of "showing that the use of force was 'objectively unreasonable' under the fourth amendment." *Finnegan v. Fountain,* 915 F.2d 817, 821 (2d Cir. 1990); *see also Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992); *Posr v. Doherty,* 944 F.2d 91, 95 (2d Cir.1991) ("[t]he right of an individual not to be subjected to excessive force is well established"). Under *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989), "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." The factors to be considered in determining whether a reasonable amount of force was used include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

■ The constitutional tort of arrest without probable cause under section 1983 is essentially identical to the tort of false arrest under New York state law. *See Posr, supra,* 944 F.2d at 96. To prove a claim of arrest without probable cause, the plaintiff must show that the defendant intended to confine him, that he was conscious of and did not consent to the confinement and that he was confined without probable cause. *Id.* at 97 (citing *Broughton v. State,* 37 N.Y.2d 451, 456, 373

N.Y.S.2d 87, 93, 335 N.E.2d 310, 316, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)). Finally, to recover for malicious prosecution, a plaintiff must show that " '(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice.' " *Id.* at 100 (quoting *Russo v. New York,* 672 F.2d 1014, 1018 (2d Cir.1982) (citations omitted)).

**B.  *Sufficiency of the Evidence***

■ The Court begins by rejecting defendants' contention that the jury's verdict was not supported by the evidence, and that they are entitled to judgment as a matter of law. The Court's review of the record indicates that there is substantial evidence in support of the verdict, including plaintiff's testimony concerning the incident; the testimony of Jeffrey Dvorin, an attorney who witnessed the episode; King's contention that he did not make an obscene gesture at Macri; the various defendants' statements concerning punching the plaintiff; and Macri's concession that he was angry when he followed King out of AP 1. Tr. at 237. Moreover, despite Macri's testimony with respect to his version of events, this defendant's credibility was challenged more than once during the course of the trial. For example, after Macri stated, on cross-examination, that he did not follow King out of AP 1 solely because he was angry, he was confronted by his statement from King's August 1983 criminal trial, that he had followed King out of AP 1 solely because he was angry about the obscene gesture.

Macri's credibility was further undermined as a result of his own counsel's questions concerning disciplinary proceedings. At the outset of the trial, defendants' counsel prevailed on their motion to exclude evidence of a prior alleged incident which involved charges of excessive force and false arrest against Macri, which led to the initiation of disciplinary proceedings that ultimately were amicably resolved.

Finding that the earlier episode was not admissible under Fed.R.Evid. 404(b) to show identity or pattern, the Court precluded plaintiff's counsel from inquiring into the prior incident involving Macri at trial. *See, e.g., Berkovich v. Hicks,* 922 F.2d 1018, 1022 (2d Cir.1991) (finding no Rule 404(b) pattern because "extrinsic acts [did not] share 'unusual characteristics' with the act charged or represent a 'unique scheme.' ") (quoting *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir.1978)); *see also Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (finding remote likelihood of admissibility under Rule 404(b) where prior incident not proven). However, notwithstanding this substantive and strategic victory, defendants' counsel inquired into the involvement of the other two defendants in prior disciplinary proceedings, thereby " 'opening the door' ", *United States v. Rea,* 958 F.2d 1206, 1225 (2d Cir.1992), for plaintiff's counsel to argue, in his closing argument, that

> The defendants inquired of Officer Kondek and Officer Marrero as to whether they had ever been the subject of departmental disciplinary proceedings, and the answer was no. Now, ladies and gentlemen, I want you to remember that that question was not asked of Officer Macri. I think you know why that question wasn't asked.

Tr. at 383. In light of the record, the Court finds that the verdict was supported by substantial evidence, and that defendants' motion for judgment as a matter of law must be denied.

C. *Propriety of Awards of Compensatory and Punitive Damages*

■ The Court turns next to consider defendants' various challenges to the awards of compensatory and punitive damages. According to the defendants,

> The jury's failure to award any compensatory damages to plaintiff demonstrates that he has failed to prove by a preponderance of the evidence that defendants had used excessive force against him. [T]he jury found that plaintiff was not injured on [the excessive force and false

arrest claims] and, thus, *a fortiori,* there can be no finding of proximate cause where there is no finding of injury.

Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, at 28. The central tenet of this argument is that the failure to award compensatory damages to plaintiff on his claims of excessive force and arrest without probable cause demonstrates that the jury concluded that King was not injured by defendants' actions. However, the jury specifically responded in the affirmative when asked whether these violations of King's rights were the proximate cause of injuries suffered by him. Thus, defendants' argument misconstrues the findings of the jury, and must be rejected.

In fact, the failure to award compensatory damages is not dispositive of the question whether a plaintiff has suffered a deprivation of his constitutional rights. As explained by the Supreme Court in *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978),

> By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivation of rights.

Indeed, "punitive damages may, in an appropriate case, be awarded for violation of 42 U.S.C. § 1983, even in the absence of actual damages." *Stolberg v. Members of Board of Trustees for State Colleges of State of Connecticut,* 474 F.2d 485, 489 (2d Cir.1973); *accord Smith v. Wade,* 461 U.S. 30, 55 n. 21, 103 S.Ct. 1625, 1639 n. 21, 75 L.Ed.2d 632 (1983) (" '[A]fter *Carey* punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury.' ") (quoting *Carlson v. Green,* 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468,

1473 n. 9, 64 L.Ed.2d 15 (1980)); *Uryevick v. Rozzi*, 751 F.Supp. 1064, 1071 (E.D.N.Y. 1990) ("Punitive damages may be awarded even in the absence of compensatory damages."); *Voorhees v. Shull*, 686 F.Supp. 389, 396 (E.D.N.Y.1987) (same).

■ In reviewing the jury's verdict, the Court must be "mindful that '[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" *Finnegan, supra*, 915 F.2d at 820 (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)). Thus, although the Court might well have reached a different conclusion than the jury on the evidence presented at trial, its role on the instant motion is not to substitute its view of the evidence for the jury's conclusions. Rather, the Court is obligated to ascertain whether there is a rational way to reconcile the jury's responses to the special interrogatories.

■ In light of the preceding discussion, the Court finds that the jury concluded that the actions of Macri and Kondek during the course of the arrest and the struggle with plaintiff were wanton and malicious, despite the fact that plaintiff did not suffer actual injuries during the scuffle outside of AP 1 and as a result of being arrested without probable cause. Contrary to defendants' assertion, the jury's finding of no liability with respect to Marrero is not inconsistent with the imposition of liability on the other two defendants. Based on the evidence introduced at trial, a rational fact-finder could have determined that Macri and Kondek, who worked together in AP 1, acted in a manner that constituted an unjustified abuse of authority when they left the courtroom to become involved in the scuffle with King, while also concluding that Marrero, who came from AP 7 upon learning that there was a confrontation occurring in the hallway, did not act in a wanton or malicious manner. Moreover, the finding of liability and imposition of

actual and punitive damages against Macri on the malicious prosecution claim lends further support for the verdict, indicating that the jury concluded that but for Macri's filing of charges, King would not have been incarcerated and would not have suffered actual damage.

■ Defendants' contention that the various damages awards are excessive also must be rejected. In challenging both the compensatory and punitive damage awards, defendants have merely provided the Court with conclusory statements with respect to the excessive nature of these awards.[3] Notwithstanding defendants' claims to the contrary, the Court does not believe that an award of $75,000 as compensation for two months of wrongful incarceration is either grossly excessive or shocks the conscience. *See, e.g., Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir.1991) (affirming jury verdict of $75,000 on malicious prosecution claim). Similarly, the award of punitive damages is not demonstrably excessive, and does not warrant a remittitur or a new trial. *See, e.g., Hughes v. Patrolmen's Benevolent Association of the City of New York, Inc.*, 850 F.2d 876, 883 (2d Cir.) (affirming separate punitive damage awards of $175,000 against two defendants), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Ismail, supra*, 899 F.2d at 186–87 (reversing district court remittitur of compensatory and punitive damages award). Moreover, "it is the defendant[s'] burden to show that [their] financial circumstances warrant a limitation of the [punitive damages] award." *Lightning Bolt, supra*, 861 F.2d at 373. Thus, defendants' failure to introduce evidence concerning their earning power or resources at trial requires rejection of the argument that the various damages awards should be reduced because they represent a disproportionate share of defendants' net worth.

■ The Court turns next to consider defendants' assertion that the compensatory and punitive damages awards must be

---

3. Given that it is improper to consider credibility on the instant motion, *see Jund, supra*, 941 F.2d at 1290, defendants' reference to "the credi-bility of plaintiff's testimony" in discussing the compensatory damages award is misplaced.

vacated because they were the product of the jury's passion and emotion. Having presided over the trial of this action, which took place shortly after the Los Angeles riots that occurred in the wake of the state court acquittal of the police officers involved in the Rodney King incident, and having reviewed the testimony of the witnesses, the documentary evidence introduced at trial and the arguments of counsel, the Court believes that the verdict was motivated, at least in part, by the jury's passion and emotion. This Court exercised exacting care in selecting a jury for this action, conducting closed door voir dire questioning that lasted for two full days. Nevertheless, plaintiff's counsel made a veiled reference to the Rodney King incident, and effectively appealed to the emotions of the jury, by arguing in his closing statement that

> [W]e're asking that you award punitive damages against defendant Macri, against defendant Marrero and against defendant Kondek, so that they will no longer think they're above the law, so that they won't be arrogant and think they can do whatever they want, so that they won't think that because they have a badge and they have a uniform they can violate people's rights, and, ladies and gentlemen, you'll be sending that same message to others in a position to abuse their authority.

Tr. at 385–86. Moreover, despite the fact that no racial animus was pleaded by plaintiff, that there was no testimony of racial animus by King during the trial, and that the Court cautioned the parties that an effort to interject race into the trial would be an unwarranted attempt to inflame the jury's passions, plaintiff's counsel asked Macri whether his encounter with plaintiff was "the first time that you ever thought that a black man had made an obscene gesture at you." *Id.* at 230; *cf.* New York State Code of Professional Responsibility EC 7–25, DR 7–106(C)(1) & (2).

If the Court's review of the record led it to conclude that the jury's verdict was not supported by substantial evidence, but, rather, that emotion and passion were the only bases for the jury's findings, the defendants would stand a good chance of prevailing on the instant motion. However, the Court already has held that there was sufficient evidence to support the verdict. Moreover, to the extent that the Los Angeles riots may have altered community perceptions of the proper response to allegations of police misconduct, this shift in societal attitudes is just one facet of the "conscience of the community," *United States v. Gleason,* 616 F.2d 2, 15 (2d Cir. 1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980), that the jury represents.

Given the evidence that was before the jury and the rational conclusions that were drawn therefrom, this Court simply does not have the power to substitute its view of the case for the inferences and conclusions reached by the jury. Indeed, the Second Circuit has not hesitated to reverse the grant of judgment as a matter of law, a new trial or a remittitur when the evidence before the District Court was legally sufficient to support the jury's verdict. *See, e.g., Sorlucco,* 971 F.2d at 873; *Ismail, supra,* 899 F.2d at 187. For all of these reasons, the motion for judgment as a matter of law, a new trial or remittitur is denied.

#### D. *Qualified Immunity*

The Court turns next to address defendants' claim that they are entitled to qualified immunity. Qualified immunity applies in two situations. First, "[p]ublic officials are entitled to qualified immunity from liability for civil damages.... [a]s long as their conduct does not violate a clearly established statutory or constitutional right." *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992); *accord Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982); *Finnegan, supra,* 915 F.2d at 823. Second, even when a defendant has violated a plaintiff's rights, qualified immunity is available if defendant's actions were objectively reasonable, "assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct.

3034, 3038, 97 L.Ed.2d 523 (1987) (citations omitted); *accord Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992); *Posr, supra,* 944 F.2d at 96.

The applicability of qualified immunity is a question of law that is reserved for decision by the Court. *See Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). However, "if a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar [to recovery]," *Cartier, supra,* 955 F.2d at 844, "the jury should decide these [factual] issues on special interrogatories," *Warren, supra,* 906 F.2d at 76, before the Court decides, as a matter of law, whether the affirmative defense of qualified immunity is available to the defendants. *See Finnegan, supra,* 915 F.2d at 823–24. Based on this analytical framework, the Court submitted special interrogatories to the jury on the factual issues underlying the qualified immunity defense, and reserved decision on the legal question of the applicability of qualified immunity.

 In light of the responses to the special interrogatories, the Court finds that qualified immunity is not available to Macri and Kondek. Given the jury's conclusion that these defendants acted in an abusive, wanton and malicious manner, the Court simply has no basis for finding that Macri and Kondek are protected from liability by the doctrine of qualified immunity. Turning briefly to defendant Marrero, the Court recognizes that there appears to be a contradiction in the responses to the special interrogatories concerning this defendant: in Question 1, the jury found that King was not subjected to excessive force by Marrero, whereas in Question 5 it found that Marrero's conduct violated plaintiff's right to be free from a use of excessive force as that term was defined in 1983, when this incident took place. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), *overruled by Graham, supra,* 490 U.S. at 396–97, 109 S.Ct. at 1872. Nevertheless, based on the jury's unequivocal message that Marrero did not use excessive force and that a reasonable officer in Marrero's position would not have believed that he was violating King's civil rights during the arrest, the Court finds that Marrero acted reasonably when he left AP 7 to assist his fellow officers, and that he is entitled to the defense of qualified immunity.

### CONCLUSION

For the foregoing reasons, defendants' motion for judgment as a matter of law, a new trial or a remittitur hereby is denied.

SO ORDERED.