■ JAMES LOUGHMAN, Appellant-Respondent, v A. W. FLINT Co., INC., Respondent-Appellant and Third-Party Plaintiff-Appellant. ST. GABRIEL'S CHURCH, Third-Party Defendant-Respondent.—Order of the Supreme Court, Bronx County (Herbert Shapiro, J.), entered April 17, 1986, which set aside a jury verdict in favor of plaintiff Loughman as contrary to the weight of the evidence and ordered a new trial, is unanimously reversed, on the law, without costs, and the verdict of the jury is reinstated.

On February 9, 1981, plaintiff Loughman, a custodial worker at St. Gabriel's Church, fell from a ladder he had been climbing in order to change a light bulb. Loughman commenced an action against the manufacturer of that ladder, A. W. Flint Co., Inc. (Flint), for negligence, breach of warranty and strict products liability. Trial took place from November 12 to November 20, 1985. The only claim submitted

to the jury was that of strict products liability on the question of whether there was a defect in the design of the ladder. The jury returned a verdict for Loughman in the sum of $800,000, which was reduced to $640,000 based on the jury's finding that plaintiff was 20% contributorily negligent. Defendant Flint thereafter moved for a judgment notwithstanding the verdict on the ground that Loughman failed to make out a prima facie case, or, in the alternative, to reduce the award as excessive. The trial court set aside the verdict as contrary to the weight of the evidence, ordered a new trial and denied the motion in all other respects. Loughman appeals from so much of the order as set aside the jury verdict and ordered a new trial, and Flint cross-appeals from so much of the order as denied its motion to dismiss the complaint for failure to make out a prima facie case.

A court should exercise its discretion to set aside a jury verdict as against the weight of the evidence only "where it seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached [its] conclusion upon any fair interpretation of the evidence" *(Cornier v Spagna,* 101 AD2d 141, 149). When the trial court does set aside a verdict which the jury could have fairly reached, "the court has usurped the jury's fact-finding duty and its order should be reversed" *(Nazito v Holton,* 96 AD2d 550, 551). Obviously, there will be instances where, because the evidence is conflicting, the trial court will determine it would have decided the case differently were it the factfinder. However, that is not the standard. Rather, the court must find that the jury's determination is palpably incorrect. Our review of the record discloses that the court herein abused its discretion in setting aside the jury's verdict.

Plaintiff's burden in establishing its cause of action for strict products liability was to show that the ladder was defective because of a mistake in the manufacturing process, improper design or failure to provide adequate warnings regarding the use of the product. *(Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 106-107.) The plaintiff had also to establish that the defective nature of the product was a substantial factor in causing plaintiff's injury. *(Supra,* at 107.) It cannot be said, under the facts herein, that the jury's verdict finding such liability was palpably incorrect.

The ladder in question was a 14-foot safety platform wood stepladder with 11 wooden steps, 4¼ inches wide mounted on two side rails which were 3¼ inches wide. The ladder was manufactured sometime between 1955 and 1958. The front

edge of each step protruded approximately one half to three quarters of an inch beyond the side rails. Each step was supported by a truss bar mounted beneath each step from the center of the side rail. The truss bar, rather than being centered on the step, however, was placed more towards the rear of each step. At each corner of the front of each step a piece of the step was cut away. There was testimony that prior to the accident the ladder was in good condition.

The accident occurred as Loughman began to climb the ladder, after having inspected it visually for defects, with one arm around the outside A frame and the other supporting a box of light bulbs. When he was between half way and three quarters of the way up the ladder, he heard a crack, felt the step under his upper foot break, and he fell. The head custodian, James Heckman, was walking towards plaintiff when the accident occurred. He heard the crack and then saw Loughman fall. Mr. Heckman noted that the front edges of the sixth, seventh and eighth steps of the ladder were broken.

Plaintiff's expert witness, a licensed engineer, testified that the protrusion of the steps over the side rails amounted to improper design in that it would lead to excessive bending of the steps in that area. The fact that the truss bars were centered more to the rear of the steps than the center also would lead to the steps breaking at their weakest point, the front edges. Further, the cutout corners on the front edges also constituted improper design as they made the front edges weaker. It was the expert's opinion that the ladder was defectively designed and unreasonably unsafe, and that alternative designs and all the technology necessary for such safer designs were available when the ladder was manufactured. In the expert's opinion it was reasonably foreseeable that the front edge of a step could break, causing a person to fall off the ladder and in falling break other steps as well.

Defendant presented five expert witnesses. These witnesses testified that the ladder met the applicable safety codes for ladders of that time and that while the 1952 code did not mention the use of a leading edge, the 1981 code sanctioned such use to the extent of three quarters of an inch. Some of these witnesses testified that the steps must have been broken prior to the accident. Two witnesses, ladder manufacturers, testified that their companies manufactured similar ladders and no claims had been made relating to broken leading edges. One expert witness for the defense stated that the leading edge was basically for cosmetic effect, not support, and that the front edges of steps do wear out more than the back

edges. This witness also stated that many ladders today are made with shorter overhangs or none at all.

From what is summarized herein of the trial evidence it is clear that this case presented a classic battle of the experts where the evidence was sharply contested as to the primary issue, defective and unsafe design in the overhang front edges of this ladder's steps. However, to make the determination in this case that the jury's verdict was palpably incorrect and against the preponderance of the evidence, one would have to conclude that the testimony of plaintiff's expert was plainly unworthy of belief. There was nothing so implausible about that evidence as to require the jury not to give it credence. Accordingly, the finding of a defect was not plainly against the preponderance of the evidence.

Neither was the jury's determination that the accident was the consequence of the design defect against the weight of the evidence. It is certainly understandable how a crack and break in a step can cause a person climbing a ladder to lose balance and fall off, especially if the person is in the process of climbing the ladder and has one foot in motion and only the other firmly planted on a step. The jury was certainly entitled to make that inference from the evidence presented. Finally, on the question of damages, we also fail to find that the jury's award was against the weight of the medical evidence, as there is no dispute that plaintiff did sustain serious back injuries. Nor are we shocked by the amount of the damages. Accordingly, we reverse the order setting aside the jury's verdict and reinstate it. Concur—Carro, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.