899 F.2d 183
 29 Fed. R. Evid. Serv. 1414
 Labib ISMAIL, Appellee/Cross-Appellant,
v.
Scott COHEN, individually and as a New York City Police
Officer and City of New York, a municipal
corporation, Appellants/Cross-Appellees.
 Nos. 960, 1227, Dockets 89-7671, 89-7751.
 United States Court of Appeals,
Second Circuit.
 Argued March 5, 1990.
Decided March 27, 1990.
 
 Jean Brandon, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, and Ellen B. Fishman, New York City, on the brief), for appellants/cross-appellees, Scott Cohen and the City of New York.
 Robert L. Herbst, New York City, for appellee/cross-appellant, Labib Ismail.
 Before TIMBERS, MESKILL and ALTIMARI, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This appeal arises from an action commenced to recover damages based on the conduct or, more precisely, the misconduct of a New York City police officer.
 
 
 2
 The action originally came on for trial before a jury and Peter K. Leisure, District Judge, in the Southern District of New York. The jury on March 7, 1989, found appellant/cross-appellee Scott Cohen liable on the 42 U.S.C. Sec. 1983 (1988) claim and on pendent state law claims. That jury also found appellant/cross-appellee City of New York liable on a theory of respondeat superior on the state law claims. The jury awarded compensatory damages totaling $650,000 and punitive damages totaling $150,000.
 
 
 3
 The district court denied defendants' motion for judgment n.o.v. or, in the alternative, for a new trial. In an order entered May 3, 1989, 712 F.Supp. 416, however, the court did grant defendants' motion for a remittitur. It ordered appellee/cross-appellant Labib Ismail to accept a reduction in compensatory damages to $200,000 and in punitive damages to $1,000 or "face a new trial on all issues." Ismail declined to accept the remittitur.
 
 
 4
 The case then came on for a new trial before a jury and Whitman Knapp, District Judge. Judge Leisure's order notwithstanding, Judge Knapp ruled that defendants were entitled to a trial on the question of damages only. The second jury found that Ismail was entitled to compensatory damages of $300,000 and punitive damages of $50,000. On June 7, 1989, the court entered judgment on that verdict.
 
 
 5
 Appellants raise four claims of error on appeal: (1) that Judge Leisure failed to dismiss the action against the City for lack of subject matter jurisdiction; (2) that Judge Leisure improperly admitted evidence of a prior bad act by Cohen; (3) that Judge Knapp exceeded his authority in limiting the new trial to damages only; and (4) that the damage award resulting from the new trial was excessive. On cross-appeal, Ismail contends that Judge Leisure's remittitur was improper in light of the evidence presented at trial.
 
 
 6
 We hold that the first jury verdict was fair and reasonable. We therefore reverse and vacate Judge Leisure's remittitur. We also remand the case to the district court with instructions to reinstate the first jury's verdict; enter judgment on that verdict; and vacate the judgment entered on the second jury's verdict. We affirm Judge Leisure's rulings on the jurisdiction and evidence issues. In light of our holding, we do not reach the remaining issues.
 
 I.
 
 7
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 8
 Ismail (a United States citizen of Egyptian origin) kept a motor vehicle in Manhattan where he resides. Early in the morning of October 11, 1983, he left his apartment to move his vehicle in order to comply with New York City alternate side parking regulations. The vehicle would not start despite Ismail's attempts. After 8 A.M. he was in violation of the regulations. Soon thereafter, Scott Cohen, a New York City police officer, approached and threatened to write a ticket. After heated words were exchanged, Cohen began to do so. Ismail looked for an eyewitness to what he perceived was unfair treatment. Finding one, he walked toward the witness, away from Cohen. According to the witness, at no time did Ismail appear to threaten Cohen.
 
 
 9
 As Ismail walked away, Cohen struck him on the back of his head without warning, causing a brief loss of consciousness. When Ismail came to, he found Cohen's gun pressed against his head. Moreover, Cohen had handcuffed Ismail so that the latter's arms were behind his back. Cohen also implanted his knee firmly in Ismail's back. Cohen stated that he would kill Ismail if the latter attempted to move.
 
 
 10
 Cohen brought Ismail to a police station. From there, he was transferred to the Central Booking headquarters. Since Ismail complained of injuries, he was taken to Bellevue Hospital. The doctors there found that Cohen's actions had caused a variety of injuries to Ismail. These included two displaced vertebrae, a cracked rib and serious head trauma.
 
 
 11
 From Bellevue, Ismail was taken back to Central Booking. He then was sent to the Bronx to spend the night in jail. He was incarcerated all of the following day and evening. Finally, on October 13, about 60 hours after he was arrested, Ismail was arraigned and released on his own recognizance.
 
 
 12
 Based on Cohen's report, Ismail was tried on three criminal counts: resisting arrest, obstructing governmental administration, and harassment. Cohen's report also alleged criminal assault and disorderly conduct, but those charges were never brought to trial. After a trial on February 28 and 29, 1984, Ismail was acquitted on all counts. At the trial, Cohen gave materially false testimony and admitted that, although he never even read the criminal complaint, he had sworn to its accuracy.
 
 
 13
 Ismail commenced the instant action on January 4, 1985 in the Southern District of New York against Cohen in his individual and official capacities, and against the City of New York. His federal claims were deprivation of constitutional rights, in violation of Sec. 1983, and ethnic discrimination, as demonstrated by Cohen's alleged racial slurs, in violation of 42 U.S.C. Sec. 1981 (1988). His pendent state law claims included assault, battery, false arrest, malicious prosecution and abuse of process. All of these claims as against the City, with one exception, were brought on the basis of respondeat superior. On the exception, the Sec. 1983 claim, Ismail alleged that the City had a policy or custom of encouraging unconstitutional police activity. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 14
 Ruling on the City's pretrial motion, Judge Leisure severed the Monell claim against the City, but let the remaining claims go to trial.
 
 
 15
 At trial, defendants objected to the introduction of evidence that, less than three months after the incident with Ismail, Cohen had attacked and arrested one Angel Castaldo without justification, and then had lied to cover up his conduct. Judge Leisure overruled the objection and admitted the evidence.
 
 
 16
 Ismail testified at trial that he continued to suffer from chronic intermittent pain in his arms, torso and head, and that this pain interfered to some extent with his daily activities. Ismail also testified that the incident caused considerable mental and emotional injury that had not healed entirely over the years. Expert medical witnesses testified in support of all of Ismail's claims.
 
 
 17
 On March 7, 1989, the first jury returned a verdict finding Cohen liable on the Sec. 1983 count, and on the state law counts of battery, false arrest, malicious prosecution and abuse of process. They found him not liable on the Sec. 1981 and assault counts. The jury awarded Ismail $650,000 in compensatory damages and $150,000 in punitive damages. The City was found vicariously liable for the compensatory damages only. Judge Leisure denied defendants' motions for judgment n.o.v. or for a new trial, but ordered Ismail to remit $450,000 of the compensatory and $149,000 of the punitive damages, or "face a new trial on all issues." Ismail declined to accept the remittitur.
 
 
 18
 After further proceedings, set forth above, this appeal and cross-appeal followed.
 
 II.
 
 19
 It is well settled that calculation of damages is the province of the jury. We have held that "[t]he standard of appellate review of damage awards, whether compensatory or punitive, 'is whether the award is so high as to shock the judicial conscience and constitute a denial of justice.' " O'Neill v. Krzeminski, 839 F.2d 9, 13 (2 Cir.1988) (quoting Zarcone v. Perry, 572 F.2d 52, 56 (2 Cir.1978)). That standard of review has long been applicable in cases where the district court simply enters judgment on the jury verdict. Morrissey v. National Maritime Union, 544 F.2d 19, 34 (2 Cir.1976) (Friendly, J.); Dagnello v. Long Island R. R., 289 F.2d 797, 806 (2 Cir.1961) (Medina, J.).
 
 
 20
 The circumstances of this case--a plaintiff's appeal from a district court's remittitur--occur far less frequently. Appellate courts accord considerable deference to the factual findings of both judge and jury. A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages. We have faced this dilemma before and have held that a more searching standard of review is necessary. We have stated that "an appellate court should 'reverse the grant of a new trial for excessive verdict only where the quantum of damages was clearly within "the maximum limit of a reasonable range." ' " Reinertsen v. George W. Rogers Constr. Corp., 519 F.2d 531, 532 (2 Cir.1975) (quoting Taylor v. Washington Terminal Co., 409 F.2d 145, 149 (D.C.Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969)). This standard has been approved by several other circuits as well. In re Innovative Construction Systems, Inc., 793 F.2d 875, 888 (7 Cir.1986); Bonura v. Sea Land Service, Inc., 505 F.2d 665, 670 (5 Cir.1975); Manning v. Altec, Inc., 488 F.2d 127, 132-33 (6 Cir.1973). We therefore review this jury's award to determine whether it exceeded the reasonable range.
 
 
 21
 Judge Leisure stated correctly that such a determination should not be made in a vacuum. Reference to other awards in similar cases is proper. Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 752-53 (2 Cir.1984). The district court here, however, improperly limited its frame of reference to federal Sec. 1983 cases. See id. at 750 (damage awards for state law violations require reference to analogous state court damage awards); Zarcone, supra, 572 F.2d at 54-55 (in Sec. 1983 cases, reference to analogous personal injury awards is proper).
 
 
 22
 We turn first to the compensatory damage award. Before we review the applicable case law, we address the district court's criticism of Ismail for failing to seek treatment (other than at Bellevue Hospital on the day of the incident) for injuries that he claimed were chronic and permanent. Ismail adduced testimony from qualified medical experts which showed that, given the nature of the injuries, such treatment would not have helped. In view of that testimony, which the jury chose to credit, the court's criticism seems unwarranted. Ismail also failed to seek counseling for his mental anguish, but explained that this failure was due to his ethnic and religious heritage rather than to a desire to exacerbate his damages.
 
 
 23
 There are several New York cases where damage awards similar to that in the instant case were upheld. The most striking is Vitale v. Hagan, 132 A.D.2d 468, 517 N.Y.S.2d 725 (1st Dep't 1987), modified on other grounds, 71 N.Y.2d 955, 524 N.E.2d 144, 528 N.Y.S.2d 823 (1988). The plaintiff in Vitale did not sustain any chronic physical injury, and was not even forced to undergo the indignity of a criminal trial. Yet he was awarded, inter alia, $750,000 for the humiliation of malicious prosecution by the defendant police officer. In Osterczy v. New York City Transit Auth., No. 17610/82 (Sup.Ct. Nov. 3, 1983), aff'd mem., 107 A.D.2d 1091, 485 N.Y.S.2d 158 (1st Dep't 1985), the court entered judgment on a jury verdict which awarded plaintiff $500,000 for a wrenched neck due to a sudden stop on a subway train. See also Loughman v. A.W. Flint Co., 132 A.D.2d 507, 518 N.Y.S.2d 389 (1st Dep't 1987) ($640,000 award reinstated for fall from ladder where plaintiff sustained unspecified "serious back injuries"), app. denied, 70 N.Y.2d 613, 519 N.E.2d 343, 524 N.Y.S.2d 432 (1988).
 
 
 24
 With respect to mental distress damages, we have been willing to uphold substantial awards where warranted. Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 883 (2 Cir.) ($225,000 in emotional distress damages in light of concerted harassment was not excessive even though no permanent harm resulted), cert. denied, --- U.S. ----, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).
 
 
 25
 As for punitive damages, it is not even necessary to go beyond our Sec. 1983 cases to determine that the $150,000 award in the instant case is within reasonable range. In Hughes, supra, 850 F.2d at 880-81, we held that defendants' vendetta against plaintiff merited a punitive damage award of $350,000, including $175,000 against an individual defendant. In O'Neill, supra, 839 F.2d at 13, we held that a $185,000 punitive assessment against three police officers was proper in light of the beating that the officers gave plaintiff about the face while he was handcuffed. In contrast to the instant case, the facts of O'Neill involved no criminal prosecution or permanent physical or emotional injury.
 
 
 26
 Appellants' brief collects a sizable list of cases in which either judgment was entered on a smaller jury verdict or the district or appellate court ordered remittitur. We stress, however, that our task is not to balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater. Rather, we inquire whether the March 7 verdict is within reasonable range. We are satisfied that it is.
 
 
 27
 We reverse and vacate the remittitur and remand with instructions to reinstate the first jury's verdict; enter judgment on that verdict; and vacate the judgment entered on the second jury's verdict.
 
 III.
 
 28
 We turn next to appellants' contention that since, in their view, there was no federal subject matter jurisdiction over the City, the district court erred in exercising pendent jurisdiction over the state law respondeat superior claims. We have carefully considered this contention and find it to be without merit.
 
 
 29
 Where there is federal question jurisdiction, determination of pendent jurisdiction over related state law claims is committed in the first instance to the discretion of the district court. United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Appellants acknowledge that determination of federal question jurisdiction and, by extension, pendent jurisdiction does not constitute an abuse of discretion if the federal claim is colorable or plausible. Hughes, supra, 850 F.2d at 881. Ismail asserted two bases of federal question jurisdiction over the City: Sec. 1983 and Sec. 1981. Appellants claim that neither was colorable or plausible and, therefore, the City was not a proper party to this action. We address these claims seriatim.
 
 
 30
 Ismail alleged in his complaint that the City maintained a policy or custom of condoning unlawful attacks on citizens by police officers, in violation of the Fourteenth Amendment and Sec. 1983. Monell v. Department of Social Services, supra, 436 U.S. at 658., 98 S.Ct. at 2018. Since the evidence required to prove such a policy differed from the evidence required to prove the allegations in the main body of the complaint (the October 11 attack by Cohen), the district court severed that count. When the verdict was rendered, therefore, the count was still outstanding.
 
 
 31
 Appellants do not attack the merits of the Sec. 1983 claim against the City, but contend that Ismail abandoned it. The record demonstrates that he did not. Following the verdict at the first trial, the court asked Ismail's attorney about his intention on the severed claim. The attorney stated that he would not pursue it if the court entered judgment on the verdict. The court chose to remit the damage award instead. Under the circumstances, the attorney did not abandon the claim. In any event, our disposition of this appeal effectively terminates the proceedings prior to the alleged abandonment.
 
 
 32
 The basis for liability on the Sec. 1981 ethnic discrimination claim against the City was respondeat superior. We have never decided whether an employer can be held vicariously liable under Sec. 1981. Since there was some evidence that Cohen had discriminated against Ismail, based on alleged racial slurs, the court's decision to submit the Sec. 1981 claim against the City to the jury was not erroneous. The correctness of that decision was not altered by the fact that the jury found for appellants on the claim.
 
 
 33
 In an opinion rendered June 22, 1989, the Supreme Court ruled that an employer could not be liable under Sec. 1981 merely due to the fact of employment. Jett v. Dallas Independent School Dist., --- U.S. ----, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Appellants, however, offer no support for their contention that Jett somehow affected the assertion of jurisdiction retrospectively.
 
 
 34
 We hold that the district court correctly held that it had pendent jurisdiction over the state law respondeat superior claims against the City.
 
 IV.
 
 35
 As part of his proof of Cohen's misconduct, Ismail sought to introduce evidence that Cohen participated in a similar incident soon after that involved in the instant case. According to that evidence (set forth in a complaint filed with the Civilian Complaint Review Board), on December 27, 1983, Cohen punched one Angel Castaldo in the jaw without provocation and hit him again while he was down. To cover up, Cohen later falsely claimed that he was responding to an attack by Castaldo on his partner. Cohen then brought Castaldo to the police station where he was charged with assault even though, on the evidence presented, no observer in good faith could believe that Castaldo was guilty.
 
 
 36
 In a pretrial order of February 7, 1989, 706 F.Supp. 243, the district court in the instant case held that the Castaldo evidence was admissible under Fed.R.Evid. 404(b) and 403. Rule 404(b) prohibits the use of other wrongful acts against a defendant merely to show that the defendant had the propensity to commit the act in question. Under our "inclusionary" approach, it will be admissible for any other relevant purpose. United States v. Brennan, 798 F.2d 581, 589 (2 Cir.1986). Rule 403 permits exclusion of relevant, probative evidence if the probative value of that evidence is "substantially outweighed" by "the danger of unfair prejudice." Our standard of review is identical for both rules. We grant the district court broad discretion, and reverse only for abuse of that discretion. Id.; Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2 Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).
 
 
 37
 In a carefully reasoned memorandum, the district court here set forth several legitimate reasons for the admission of the Castaldo evidence (pattern, intent, absence of mistake, etc.) and determined that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence.
 
 
 38
 On the record before us, we reject appellants' contention that the court's ruling admitting the Castaldo evidence constituted an abuse of discretion.
 
 V.
 To summarize:
 
 39
 We hold that the jury verdict of March 7, 1989 did not exceed the reasonable range of possible verdicts. We therefore reverse and vacate the district court's remittitur, and remand the case to the district court with instructions to reinstate the first jury's verdict; enter judgment on that verdict; and vacate the judgment entered on the second jury's verdict.
 
 
 40
 Rejecting appellants' remaining contentions, we hold (1) that the district court correctly exercised pendent jurisdiction over the state law claims against the City and (2) that the court properly admitted the Castaldo evidence.
 
 
 41
 Reversed, vacated and remanded in part; affirmed in part.