John C. RODICK, Plaintiff,

v.

**CITY OF SCHENECTADY; Kevin Coker; Brian Carroll; Robert P. McHugh; Eric Yager and John Falvo, Jr., individually and as agents, servants and/or employees and police officers of the City of Schenectady and City of Schenectady Police Department, Defendants.**

No. 90–CV–937.

United States District Court, N.D. New York.

June 24, 1994.

Tobin & Dempf, Albany, NY, for plaintiff; Kevin A. Luibrand, of counsel.

Michael R. Cuevas, Corp. Counsel, City of Schenectady, Schenectady, NY, for defendant City of Schenectady; L. John Van Norden, Asst. Corp. Counsel, of counsel.

Grasso & Grasso, Schenectady, NY, for defendant police officers; Jane K. Finin, of counsel.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

The plaintiff moves pursuant to Fed. R.Civ.P. 59(e) for modification of the jury award of October 21, 1993 in the remand trial on damages for malicious prosecution. Plaintiff seeks: (1) modification of the judgment so as to award the plaintiff prejudgment interest on the lost income award at a rate of 9% per annum calculated from September 15, 1989, an intermediate date pursuant to CPLR § 5001(b), to the date of judgment entry; (2) modification of the judgment to award plaintiff prejudgment interest on the expenses of defending against criminal prosecution at a rate of 9% per annum calculated from April 4, 1990, the date the criminal trial ended, to the date of judgment entry; (3) modification of the judgment to award plaintiff prejudgment interest on the remainder of the compensatory judgment calculated at 9% per annum from March 26, 1992, the date liability was first determined for malicious prosecution, to the date of judgment entry; and (4) modification of the judgment directing that interest on the entire compensatory judgment award for malicious prosecution accrue at 9% per annum from the date judgment was entered until the date paid in full.

On remand from the Second Circuit Court of Appeals 1 F.3d 1341 on the issue of damages for malicious prosecution liability, the plaintiff was awarded $2,838,650, including $38,650 for expenses incurred in defending himself during criminal proceedings, $300,000 for lost income, and $2,000,000 for injury to reputation, inconvenience, anguish, humiliation and loss of liberty. The jury also awarded $500,000 for future injury to reputation, inconvenience, anguish and humiliation.

The defendants seek a judgment as a matter of law pursuant to Fed.R.Civ.P. 50, remittitur, or alternatively, a new trial pursuant to Fed.R.Civ.P. 59. Defendants assert that the testimony presented at trial does not support the damages award granted by the jury. The court will address these motions seriatim.

## DISCUSSION

### I. Motion Pursuant to Fed.R.Civ.P. 59(e)

#### A. Prejudgment Interest

 The issue of the appropriateness of awarding prejudgment interest is to be decided on the basis of state law. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n. 13 (2d Cir.1983). In New York, whether prejudgment interest is recoverable in a particular action is based on CPLR § 5001. CPLR § 5001(a) reads:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y.Civ.Prac.L. & R. 5001(a) (McKinney's Supp.1993). Because this jury verdict was intended as compensatory relief for the malicious prosecution of Mr. Rodick, including his lost income and litigation expenses, and not as compensation for breach of contract or for interference with property, prejudgment interest is not proper under New York law. Furthermore, it is clear that property, as the term is used in CPLR § 5001(a), does not refer to lost wages. *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 852 (2d Cir.1992); *Gordon v. Board of Educ.*, 52 Misc.2d 175, 274 N.Y.S.2d 543, 546 (Sup.Ct. Kings Co.1966). "The right to interest is purely statutory and in derogation of the common law and it cannot be extended beyond the statutory regulations or limitations." *Gordon*, 274 N.Y.S.2d at 545. Thus, plaintiff's motion for prejudgment interest on the jury verdict is denied.

#### B. Postjudgment Interest

 The appropriateness of postjudgment interest is determined by federal rather than state law. *See U.S. Fire Ins. Co. v. Federal Ins. Co.*, 670 F.Supp. 1191, 1199 (S.D.N.Y.1987) (noting that the rate of postjudgment interest is set by 28 U.S.C. § 1961); *see also* 28 U.S.C. § 1961 (stating that "interest shall be allowed on any money judgment in a civil case recovered in a district court"). 28 U.S.C. § 1961(a) sets postjudgment interest at a rate "equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961(a). Thus, the court will use this rate to determine the proper interest and not the 9% per annum sought by the plaintiff.

The plaintiff correctly requests that the postjudgment interest run from the date the judgment was entered. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835–37, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). Since the judgment in this case was entered on April 13, 1992, the proper interest rate is that set by the Treasury on April 2, 1992 which was 4.55%.

### II. Alteration of the Jury Verdict

The defendants seek judgment as a matter of law on the amount of the jury award of damages for malicious prosecution, or alternatively, a new trial on the issue of damages for malicious prosecution pursuant to Fed. R.Civ.P. 59, or remittitur. A judgment as a matter of law is only appropriate when there is "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture." *King v. Macri*, 800 F.Supp. 1157, 1160 (S.D.N.Y.1992), *quoting, Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 871 (2d Cir.1992). The standard for granting a new trial is lesser for the court may grant a new trial any time it becomes convinced that the jury has "reached a seriously erroneous result or that the verdict is a miscarriage of justice." *King*, 800 F.Supp. at 1160, *quoting, Sorlucco*, 971 F.2d at 875. Remittitur, on the other hand, is essentially a "statement by the court that it is shocked by the jury's award of damages." The standard of review in deciding whether to grant remittitur is "whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *King*, 800 F.Supp. at 1161, *quoting, Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978). It is in light of these stan-

dards that the court examines the defendants' motions.

### A. Lost Income

■ The jury awarded plaintiff $300,000 in lost income and did not award any damages for future lost income. Defendants claim that Mr. Rodick's records show that he never earned more than $37,000 per year in any year either before or after the malicious prosecution took place. Defendants also claim that plaintiff's earnings after the malicious prosecution were not significantly lower than his previous earnings and that the jury must have been confusing loss of personal income and business loss in its verdict. Thus, defendants assert that the jury verdict for lost income is not supported by the evidence presented.

Plaintiff argues, on the other hand, that the trial record supports the determination of lost income. He points to the jury charge which clearly shows that members of the jury were instructed that they could award damages to the plaintiff for "any loss of income from his employment" they found he may have sustained. (Pltf.Exh. B at 10). Additionally, the plaintiff argues that evidence presented at trial supports the $300,-000 lost income award. Plaintiff notes that including benefits, he made $7,500 in 1986, $43,500 in 1987, and $54,500 in 1988. Plaintiff notes that his salary dropped to $14,000 during the 14 months of malicious prosecution and that he could have earned approximately $25,000 in 1990. Plaintiff also claims that testimony was presented that show he had almost no income in 1991 and from 1992 until the trial.

Upon review of the record, the court finds that the jury verdict of $300,000 for lost income is supportable by the testimony presented at trial. Therefore, the court denies the defendants' motion to alter the amount of the judgment based on lost income by judgment as a matter of law, new trial, or remittitur.

### B. Injury to Reputation and Loss of Liberty

The defendants seek separate alterations of the jury's verdict for injury to reputation and loss of liberty. However, on the verdict sheet supplied to the jury, one award was made for loss of liberty, injury to reputation, inconvenience, anguish, and humiliation combined and a separate award was made for the same categories of future damages. It is therefore impossible for the court to determine how much of the award was related to each category of injury.

■■ At common law, malicious prosecution is assumed to be harmful to an individual's reputation. Nonetheless, it is necessary to make "an objective showing of the victim's reputation before the false arrest and malicious prosecution, versus its damaged condition afterwards." *Papa v. City of New York,* 194 A.D.2d 527, 598 N.Y.S.2d 558, 563 (2d Dept.1993). The plaintiff's own testimony that he had lost a certain respect due to the prosecution is not enough without other objective evidence of such loss. *Papa,* 598 N.Y.S.2d at 563.

■ In this case, as stated before, the jury awarded $2,000,000 for injury to reputation, inconvenience, anguish, humiliation and loss of liberty. It also awarded $500,000 for future injury to reputation, inconvenience, anguish and humiliation to cover a period of 7 years into the future. The defendants argue that loss of reputation was supported only by the testimony of the plaintiff himself and the testimony of Bruce Sherman and Joseph Bradley, two other witnesses at trial.

The record shows that the plaintiff testified generally that his reputation was damaged by the resisting arrest charges including statements that after he was arrested on these charges, his company no longer received calls for bids on contracts as it had in the past. He was reduced to doing small bricklaying, drywalling, and sheetrocking jobs for which he was paid by the hour. Bruce Sherman, a co-worker of the plaintiff, testified that a credit relationship of Rodick's company deteriorated because of the charges. He testified that Precast Concrete Products, a company that had a contract to deliver window sills to Rodick's company, refused to make the delivery unless the general contractor for the job, Merritt Meridian, underwrote the credit line. Precast Con-

crete Products told Sherman that the underwriting was necessary because of Rodick's bad press.

Joseph Bradley, the accountant for Rodick's business, testified that Rodick's company was profitable before the resisting arrest charges. He also testified that he ended his business association with Rodick's company, at least in part because of the resisting arrest charges. Such testimony leads the court to believe that the jury's finding of damages in this category was not the result of sheer surmise or conjecture and that the jury did not reach a seriously erroneous result or a verdict which is a miscarriage of justice, thus making judgment as a matter of law or a new trial inappropriate.

 However, the court believes that remittitur is appropriate because the award is so high as to shock the judicial conscience and constitute a denial of justice. An award of $2,000,000 is extremely high in such a case. The plaintiff asserts that in examining the amount of the jury award the district court should use the test set forth in the Second Circuit Court of Appeals' decision *Ismail v. Cohen*, 899 F.2d 183 (2d Cir.1990), which examines whether the jury award exceeds the maximum limit of a reasonable range. However, that decision sets forth the criteria for an appellate reversal of a trial court's decision to grant a new trial on the issue of the amount of damages awarded by the jury. *Id.* at 186. The court in *Ismail* noted that:

> [w]e have stated that "an appellate court should 'reverse the grant of a new trial for excessive verdict only where the quantum of damages was *clearly* within "the maximum limit of a reasonable range." ' "

*Id.* (citations omitted).

Therefore, this court finds that the test adopted in *Ismail* is not appropriate for use by a district court in determining whether to grant a new trial or change the amount of damages awarded by a jury. It is only appropriate for use by an appellate court in determining whether to reverse a district court's decision to grant a new trial.

More properly, the court should follow the test used by New York trial courts which states that to determine whether a jury award constitutes a denial of justice or shocks the judicial conscience, it is proper for the court to look to awards made in similar cases. *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1058 (2d Cir.1990) (stating that "to determine whether an award of damages is shockingly excessive when the law of a particular state is applied, we must examine and compare the challenged award with awards made in similar cases in the courts of that state"). Examination of similar cases is appropriate in order to "provide 'some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation to be awarded.' " *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 750 (2d Cir.1984), *quoting, Senko v. Fonda*, 53 A.D.2d 638, 639, 384 N.Y.S.2d 849, 851–52 (2d Dept.1976). Unlike the plaintiff suggests, there is not a requirement that the court uphold the jury's award so long as it does not exceed the highest amount awarded in a similar case in that state.

An endless variety of malicious prosecution actions have been tried by juries in New York State. The court examined a number of similar cases presented by the parties in order to determine the reasonableness of the jury's award in the instant case. As a reference point from which to examine the cases awarding malicious prosecution damages, it should be noted that in the case at hand, Rodick was jailed for 23 days and prosecuted for 14 months ending with a criminal trial judgment in his favor. Prior to the prosecution, Rodick owned and managed a small construction company in Upstate New York. This company, as the trial testimony shows, owed back taxes to the Internal Revenue Service.

In the case *Papa v. City of New York*, 598 N.Y.S.2d at 558, factually similar to the case at hand, a man was arrested and assaulted by police officers in connection with a charge which was later dropped. The jury awarded Papa $3.37 million in compensatory damages which was increased upon appeal to $4.02 million. Papa, a former attorney who at the time of arrest was employed as a parish basketball coach, was held in jail for two

days and prosecuted for approximately three months at which time the charges were withdrawn by the district attorney. In another New York case, *Vitale v. Hagan,* 132 A.D.2d 468, 517 N.Y.S.2d 725 (1st Dept.1987), an individual was awarded $750,000 for malicious prosecution damages. In *Vitale,* the charges were dismissed after 8 months of prosecution and the individual was never jailed during that time.

However, other New York cases have awarded far less. In *Parkin v. Cornell Univ.,* 182 A.D.2d 850, 581 N.Y.S.2d 914 (3d Dept.1992) the court reduced an award for compensatory and punitive damages from $100,000 each to $10,000 each finding that the amounts awarded were unreasonable. *Id.,* 581 N.Y.S.2d at 916. The court noted that the plaintiffs were only involved with the criminal justice system for a short time, that much of the embarrassment caused was due to their encouragement of media coverage, and that the jury's damages figure was arrived at through speculation and passion. *Id.* at 916–17.

Similarly, in *Feldman v. Town of Bethel,* 106 A.D.2d 695, 484 N.Y.S.2d 147 (3d Dept. 1984), the court determined that the jury had acted out of passion in arriving at an award of damages for malicious prosecution. The court ordered a new trial on the amount of damages unless the parties could agree within 20 days to decrease the jury's award from $35,000 for compensatory damages and $65,000 for punitive damages to $15,000 and $1,000 respectively. The plaintiff in the case was a senior newspaper editor who was arrested for tape recording a town meeting and subsequently lost his job and suffered damage to his reputation as a result of the prosecution.

In comparison, the court in *Orndorff v. De Nooyer Chevrolet, Inc.,* 117 A.D.2d 365, 503 N.Y.S.2d 444 (3d Dept.1986) upheld a jury award of $25,000 for malicious prosecution. The plaintiff in that case was a major in the Air Force Reserves with no previous criminal record and a respected employee of a large corporation. The plaintiff was arrested, handcuffed, fingerprinted and photographed, strip searched, and held in the Albany County Jail overnight as a result of being wrongly accused of stealing a car.

In viewing these cases, the court finds the award of $2,000,000 for lost reputation and other injuries and $500,000 for future loss of reputation and other injuries is excessive. While the court notes that the prosecution undertaken against Rodick was more lengthy and complete than those in the cases described above, the loss of reputation cannot be found to be as great based on the testimony presented at trial. As mentioned before, in order to find reputation damage, the jury must be presented with objective evidence of good reputation before the arrest and prosecution and its damaged condition afterward. *Papa,* 598 N.Y.S.2d at 563. The testimony regarding loss of reputation consisted of statements that an unidentified representative of Precast Concrete had refused to extend credit to the plaintiff's business on one occasion because of "bad press" related to Rodick's arrest. While this testimony given by Bruce Sherman shows objective evidence of damaged reputation, the evidence of previous reputation supplied by Joseph Bradley's testimony shows that Rodick's reputation before prosecution was not spotless. Bradley's testimony showed that Rodick's company was in trouble with the IRS before prosecution while Sherman's testimony showed only that one company refused to carry on business-as-usual with the plaintiff after arrest and prosecution. This evidence, while arguably supporting some award, does not support an award of $2.5 million in compensatory and future damages. Taking all this into consideration, the court finds it appropriate to lower the jury award for injury to reputation, inconvenience, anguish, humiliation, and loss of liberty to $300,000, and the award for future loss of reputation, inconvenience, anguish and humiliation to $200,000.

## C. Expenses in Defending Criminal Prosecutions

Defendants claim that the plaintiff's proof regarding the cost of services in defending against the charge of resisting arrest is inadequate to support the jury's award of $38,650. Plaintiff's proof in support of these expenses included testimony by the plaintiff and records of bills sent to him by Tobin & Dempf, the law firm that represented him.

These were admitted into evidence and the jury made their ruling based on that information. The admissibility of such evidence as proof of the cost of defending against the criminal prosecution is based on the Federal Rules of Evidence, and not on the requirements of New York law governing reimbursement for attorneys fees as defendants suggest. Thus, based on the evidence before the jury, the court finds that their award of $38,650 was reasonable. Therefore, the defendants' motion to alter the jury award is denied on these grounds.

## CONCLUSION

In conclusion, the court upholds the jury's award for lost income and attorneys fees and lowers the award for injury to reputation, inconvenience, anguish, humiliation, and loss of liberty to $300,000, and the award for future loss of reputation, inconvenience, anguish and humiliation to $200,000. The court also denies plaintiff's requests for various types of prejudgment interest and grants plaintiff's request for postjudgment interest at a rate of 4.55% per annum.

**IT IS SO ORDERED.**