Joanne NIEMANN, Plaintiff,

v.

William WHALEN, sued in his official
and individual capacities, and
Fleet Bank, Defendants.

No. 93 Civ. 7576 (WCC).

United States District Court,
S.D. New York.

May 24, 1996.

Law Offices of Michael H. Sussman, Goshen, New York (Michael H. Sussman, Stephen Bergstein, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General for the State of New York, William Whalen, Department of Law, New York City (Richard J. Cardinale, Christine E. Morrison, of counsel), for Defendants.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge:

Following trial of the above-captioned case, the jury returned a verdict for plaintiff. Defendant William R. Whalen has made a motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b), or for a new trial, pursuant to Fed.R.Civ.P. 59. In the alternative, he seeks a remittitur of the punitive damage award against him. Plaintiff has filed an application seeking an award of attorney's fees and expenses. For the reasons

set forth below, we deny defendant's motion for judgment as a matter of law and grant his motion for a new trial, solely on the issue of punitive damages, unless plaintiff accepts a remittitur. Plaintiff's application for attorney's fees and expenses is granted.

## BACKGROUND

In June 1992, plaintiff Joanne Niemann was a teller supervisor at a branch office of defendant Fleet Bank. On June 30, 1992, a day when plaintiff was absent from work, other branch employees discovered that $3,220 was missing from the bank vault. The bank began an investigation. Shortly thereafter, the bank reported the incident to the New York State Police and defendant Whalen, a State Police investigator, was assigned to the case. As part of the inquiry into what happened to the missing money, Whalen and Frank Connelly, the bank's assistant security officer, interviewed plaintiff. By the conclusion of that interview, Niemann had signed a confession stating that she took the money. Subsequently, the bank decided to press charges against Niemann. On July 9, 1992, plaintiff was arraigned on a charge of grand larceny, pled not guilty and was released on a personal recognizance bond. On July 21, 1993, the Town Justice dismissed the charge against Niemann for failure to prosecute in a timely fashion.

On November 3, 1993, plaintiff filed this suit under 42 U.S.C. § 1983 against defendants Whalen and Fleet Bank. This court conducted a jury trial in February 1996. The claim submitted to the jury was whether defendants, acting in concert, had violated plaintiff's Fifth Amendment rights by coercing her confession. On February 9, 1996, the jury returned a verdict for plaintiff and awarded her $150,000 in compensatory damages, $200,000 in punitive damages against Whalen and $275,000 in punitive damages against Fleet Bank. Prior to the entry of judgment, defendants made motions seeking judgment as a matter of law, a new trial or a remittitur of the punitive damage awards. While these motions were pending, defendant Fleet Bank settled with plaintiff for $150,000, inclusive of compensatory damages, punitive damages and attorney's fees.

## DISCUSSION

On the instant motion, defendant Whalen seeks three types of relief: judgment as a matter of law under Rule 50(b), a new trial pursuant to Rule 59 or a remittitur. The court may grant a motion for judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue...." Fed.R.Civ.P. 50. "The standard for granting a motion for judgment [as a matter of law] pursuant to Rule 50(b) is whether the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 (2d Cir.1991) (internal quotation omitted). Judgment as a matter of law is reserved for the rare occasions when there is a complete absence of evidence to support the jury's verdict or the evidence is so overwhelming that a reasonable person could only have reached the opposite result. *See Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir.1992).

The standard for granting a motion for a new trial is less stringent. *See King v. Macri*, 800 F.Supp. 1157, 1160 (S.D.N.Y. 1992), *remittitur ordered*, 993 F.2d 294 (2d Cir.1993). "The district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988); *see also Sorlucco*, 971 F.2d at 875.

Defendant's third alternative request for relief is for a remittitur, which is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir.1990). On a motion for a remittitur, the standard is "whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990); *King*, 800 F.Supp. at 1161. If the district court elects to order a remittitur, it "should

remit the jury's award only to the maximum amount that would be upheld by the district court as not excessive." *Earl,* 917 F.2d at 1330.

## A. Fifth Amendment

Defendant seeks judgment as a matter of law on plaintiff's § 1983 claim that defendant Whalen violated her Fifth Amendment privilege against self-incrimination. Defendant contends that because plaintiff testified that she did not know that Whalen was a police officer, she cannot, as a matter of law, recover on her § 1983 claim for coercion of her confession. Defendant's argument could be construed in two ways, neither of which is persuasive. First, defendant could be arguing that as a matter of law, plaintiff cannot establish that Whalen was acting under color of state law if plaintiff did not know that Whalen was a police officer. This is precisely the argument that we rejected when we denied defendant's Rule 50(a) motion made at the close of plaintiff's case. *See* Tr. 355–56. Defendant has advanced no new arguments on this point, and we see no reason to reach a different result at this time.

Second, defendant could be arguing that as a matter of law, plaintiff's Fifth Amendment rights could not have been violated during the interview because she could not have been in custody if she did not know that Whalen was a police officer. An interviewee's Fifth Amendment privilege against self-incrimination attaches during custodial interrogations. *See Weaver v. Brenner,* 40 F.3d 527, 534–35 (2d Cir.1994). In the absence of a formal arrest, the test used to determine whether an interviewee is in custody is an objective one that focuses on whether a reasonable person in the interviewee's position would have understood herself to be subject to restraints comparable to those associated with formal arrest. *See United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). As we stated in our ruling on defendant's summary judgment motion, in which defendant advanced the same argument that he raises here, the question of whether plaintiff knew that Whalen was a police officer is relevant to the determination of whether she was in custody during the

interview because a reasonable person would be far more likely to feel subject to restraints comparable to those associated with formal arrest when questioned by Connelly and a police officer than when questioned by Connelly and a "friend." *See id.,* at 99 (stating that interviewee's assertion that he did not know that questioner was EPA criminal investigator diminished his contention that he was subject to coercive pressures).

Defendant is not, however, entitled to judgment as a matter of law on this basis. Whalen testified at trial that he was introduced to plaintiff as a State Police officer. *See* Tr. 365, 374–75. While plaintiff testified to the contrary, *see* Tr. 77–78, 81, 127, 132–33, the jury could have credited Whalen's testimony on this point. Therefore, when we view the evidence in the light most favorable to plaintiff, without considering credibility or weight, we believe that the jury could reasonably have concluded that plaintiff knew that Whalen was a police officer. Because there is evidence in the record that supports this conclusion, we need not decide whether the jury could reasonably have concluded that plaintiff was in custody in the absence of any such evidence.

## B. Punitive Damages

Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Defendant contends that as a matter of law, punitive damages are not warranted in this case. We disagree. Viewed in the light most favorable to plaintiff, without considering credibility or weight, the evidence adduced at trial indicates that Whalen and Connelly detained plaintiff for four hours. During that time, Connelly, who is substantially larger than plaintiff, told plaintiff that she could not leave the conference room where the interview took place until she confessed, cursed at her, raised his voice and pounded his fists on the table. Connelly informed plaintiff that he just needed to someone to admit to taking the money and

that the bank would not prosecute her if she confessed. He threatened to tell her family that she took the money, to search her home in front of her children and to tell her husband's employer about the investigation. Whalen, an experienced police officer, was present in the room while the interview was going on and did nothing to prevent Connelly from conducting the interview in this manner. Furthermore, a number of times during the course of the interview, Connelly threatened plaintiff and then turned to Whalen for confirmation that he could carry out his threats. Whalen indicated that he could. *See* Tr. 77–91.

The jury, in response to a question on the special verdict form, found that defendant Whalen's conduct was sufficiently wanton, reckless or callous that punitive damages should be awarded. Under these circumstances, we cannot say that the evidence permitted a conclusion only in defendant Whalen's favor on this issue. Hence, defendant is not entitled to judgment as a matter of law that punitive damages are unwarranted in this case.

■ Whalen also argues that he is entitled to a new trial of all of the issues in this case because the punitive damage award is so excessive that it reveals that the jury's verdict on all issues, including liability and compensatory damages, is tainted by passion and prejudice. We do not find this argument persuasive. We see no indication in the record that the jury's verdict on liability or compensatory damages was based on passion rather than reason. Whalen himself does not challenge the jury's compensatory damage award. In fact, he has not identified anything specific, other than the size of the punitive damage award, that supports his argument in favor of a new trial on all issues. Therefore, defendant's motion for a new trial on all issues is denied.

■ Defendant also seeks a new trial solely on the issue of punitive damages, or, in the alternative, a remittitur of the punitive damage award, because he contends that the amount awarded by the jury is excessive. The purpose of punitive damage awards is to punish the defendant and to deter the defendant and others from engaging in similar conduct in the future. *See Smith,* 461 U.S. at 54, 103 S.Ct. at 1639. The decision to award punitive damages is a discretionary moral judgment made by the jury. *See id.,* at 52, 103 S.Ct. at 1638. Nevertheless, the amount of punitive damages should not be greater than the amount reasonably necessary to fulfill the purposes of punishment and deterrence or the punitive damage award becomes, in part, a windfall to the individual litigant. *See Aldrich v. Thomson McKinnon Securities, Inc.,* 756 F.2d 243, 249 (2d Cir. 1985).

■ We believe that the jury's award of $200,000 in punitive damages against Whalen is so great as to shock the judicial conscience and to constitute a denial of justice and a windfall for plaintiff. This amount is well in excess of the figure reasonably necessary to punish the defendant and to deter the defendant and others from similar conduct. Therefore, we will order a new trial on the issue of punitive damages unless plaintiff agrees to accept a remittitur.

As plaintiff points out, the Second Circuit has previously upheld a number of substantial punitive damages awards in police misconduct cases. *See, e.g., Ismail,* 899 F.2d at 187 ($150,000); *Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 879, 883 (2d Cir.) ($175,000 against each of two defendants), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *O'Neill v. Krzeminski,* 839 F.2d 9, 13–14 (2d Cir.1988) ($125,000 and $60,000, respectively, against two defendants); *see also King,* 993 F.2d at 299 (remitting punitive damage award against one defendant from $175,000 to $100,000 and against another from $75,000 to $50,000). These cases, however, involved either physical abuse of the plaintiff by the defendant or defendants or a lengthy campaign, motivated by personal animus, by the defendants to destroy the plaintiff's career. The evidence against Whalen is simply not of this order. He never touched plaintiff, and she attributed the verbal abuse that she suffered to Connelly. Certainly, Whalen could have and should have tried to put a stop to Connelly's behavior, but his failure to do so is not comparable to the situation in, for example,

*Ismail.* In that case, a police officer who was about to write a parking ticket on the plaintiff's car had an argument with the plaintiff, Ismail. As Ismail was walking away from him, the officer hit Ismail on the back of the head, causing Ismail to lose consciousness. When Ismail came to, the officer had handcuffed him and pressed a gun against his head. The officer threatened to kill Ismail if he moved. The officer used enough force that Ismail suffered a cracked rib, head injuries and two displaced vertebrae. *See Ismail,* 899 F.2d at 185. The Second Circuit upheld the jury's award of $150,000 in punitive damages against the officer. *See id.,* at 187. Here, the punitive damage award against Whalen was $200,000.

While we certainly consider Whalen's conduct in this case to be a serious breach of plaintiff's Fifth Amendment rights, this punitive damage award far surpasses the amount necessary to punish Whalen for permitting Connelly to coerce a confession out of plaintiff or to deter Whalen or others from engaging in similar conduct in the future. We believe that an award of $40,000 in punitive damages would adequately serve the goals of punishment and deterrence. This figure represents the maximum amount of punitive damages that we would uphold as not excessive.

Therefore, we will grant defendant Whalen's motion for a new trial on the issue of punitive damages unless plaintiff consents to remit the punitive damage award against Whalen to $40,000.

Pursuant to the terms of the settlement reached between plaintiff and defendant Fleet Bank, plaintiff will receive approximately $52,000 in punitive damages from defendant Fleet Bank.[1] Although we were not called upon to decide this issue, we believe that this figure reflects the amount of damages reasonably necessary to serve the goals of punishment and deterrence in the case of defendant Fleet Bank. We therefore note without surprise that the ratio between $40,000 and $52,000 (40,000/52,000 = .77) is com-

parable to the ratio of the punitive damage awards that the jury assessed against the defendants (200,000/275,000 = .73).

### C. Attorney's Fees

Under 42 U.S.C. § 1988, this court may, in its discretion, award reasonable attorney's fees to a prevailing party in a § 1983 case. A prevailing plaintiff, which Niemann certainly is, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (internal quotation omitted). Plaintiff has submitted an affidavit detailing the basis of her application for an award of $43,275.00 in attorney's fees and $2,651.74 in expenses. This figure represents plaintiff's calculation of the lodestar amount. Plaintiff has not sought an upward adjustment of the fee. We have reviewed plaintiff's application and find it to be reasonable. Defendant Whalen does not oppose an award of fees and costs, nor does he challenge the amount that plaintiff has requested. Plaintiff will receive $22,963.37, or one-half of the requested amount, from the settlement funds that will be paid over by Fleet Bank. Therefore, we grant plaintiff's application for an award of attorney's fees and expenses against defendant Whalen in the amount of $22,963.37.

### CONCLUSION

For the reasons set forth above, we deny defendant's motion for judgment as a matter of law. We will grant defendant's motion for a new trial, solely on the issue of punitive damages, unless plaintiff consents, within 30 days of the date of this opinion, to remit the award of punitive damages against Whalen to $40,000. Plaintiff's application for attorney's fees and expenses is granted. If plaintiff elects to accept the remittitur, she may submit a proposed judgment in accordance with

---

1. Plaintiff has settled with Fleet Bank for $150,000. Of that amount, $75,000 is attributable to the bank's share of compensatory damages and $22,963.37 is attributable to its share of plain-

tiff's attorney's fees and expenses. Therefore, the punitive damages component of the settlement figure is $52,036.63.

the jury's verdict and this decision for the court's signature.

SO ORDERED.